STONEWALL J. JACKSON, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 72002, 72119, 72127, 72244, 73625, 75762, 76448-76455, 76980.
Promulgated June 7, 1938.

*O. Walker Taylor, Esq.,* and *John F. McCabe, Esq.,* for petitioners Estate of Nathan T. Pulsifer, Bankers Trust Co., Executor, and Dorothea V. A. Swift.

*James A. O'Callaghan, Esq.,* and *F. C. Laird, C. P. A.,* for petitioners Thomas R. Wyles and W. D. Waugh.

*G. L. Carroll, Esq.,* for petitioner Stonewall J. Jackson.

*H. A. Mihills, C. P. A.,* for petitioners Henry U. Birdseye, Hext M. Perry, Theodore Gabert, Philip L. Maury, George M. Seibert, E. C. Roberts, Horace S. Boutell, William E. Vincent, William J. Boston, and Frank T. Hogan.

*J. R. Johnston, Esq.,* for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Henry U. Birdseye; Estate of Nathan T. Pulsifer, Bankers Trust Co., Executor; Dorothea V. A. Swift; W. D. Waugh; Hext M. Perry; Theodore Gabert; Philip L. Maury; George M. Seibert; E. C. Roberts; Horace S. Boutell; William E. Vincent; William J. Boston; Frank T. Hogan; Thomas R. Wyles.

1006

1008

1010

OPINION.

MURDOCK: The only question for decision in this case is the fair market value of the Valspar stock on February 14 and on June 12, 1930. The first date is determinative in the Pulsifer and Swift cases, while the latter date is determinative in all of the remaining cases. The parties agree that each distribution was pursuant to a plan of reorganization, and the profit received by the stockholders is recognized only to the extent of the cash. They have also agreed upon the basis for gain or loss on all of the old shares surrendered. The Commissioner has not recognized a profit in any case in excess of the amount of the cash. But in every case he has computed a profit by attributing a certain fair market value to the stock. The petitioners contend that the stock had no fair market value. The stock of all of the companies was closely held and there were no sales at or near the dates in question. There were no sales of the Valspar stock.

The Commissioner used $22.35 as the fair market value of the stock on July 12, 1930. He obtained that figure from a balance sheet for the new Valspar Corporation as of June 12, 1930, which he apparently constructed by taking the last available balance sheet and making certain adjustments thereto. He used two different figures to represent the fair market value of the stock on February 14, 1930, one in the case of Pulsifer and a different one in the case of Swift. Each was slightly less than the figure used as the value on July 12. He claims that his figures are justified, not only by the book values of the stock, but by earnings and the past history of the corporations. He also claims that the parties to the reorganization themselves recognized that the value of the Valspar stock was in the neighborhood of $25. His arguments are supported, for the most part, by evidence in the record which ordinarily would be entitled to great weight. Yet other evidence in this record indicates that that evidence upon which the Commissioner relies is not a reliable indication of the fair market value of the stock.

A very serious situation in the affairs of Valentine developed when Duco came on the market. The officers of Valentine recognized the seriousness of that competition and they tried in every way they knew to save their corporation. They tried to save as much of its business as could be saved and they tried to develop profitable new lines. But immediately following the advent of Duco came the stock market crash and the depression, which began in the fall of 1929. Despite the earning history of its predecessors, Valspar never earned money. On the contrary, it sustained large operating losses. The effect of the two reorganizations was that the stockholders of Valentine, Con-Ferro, and Graphite received a very large amount of cash which they took out of the business. The stock which they received was never sold.

Although it had a substantial book value, the evidence indicates that that book value was the result of certain writeups of the book value of a number of the assets which were not justified under the circumstances. The petitioners did not believe that the Valspar stock which they received had any fair market value at the time they received it, and, with one exception, they did not report it on their returns as having any fair market value. Subsequent events confirmed their opinions. Any reasonable person interested in buying this Valspar stock on the critical dates would have learned of the prospects of this company, and we can not assume that any reasonable person knowing those prospects would have given anything for the stock. This is not a case of the disposition of stock where the gain or loss must be determined in some definite amount, but is a case where the question of further gain or loss is postponed under the statute to await the final disposition of the stock. See Paul & Mertens, sec. 52.01. It is, of course, possible that the stock may not have been entirely worthless, but, after considering all of the evidence, we have come to the conclusion that for the purposes of this case our finding that it had no fair market value on the critical dates is in accordance with the weight of the evidence.

Reviewed by the Board.

*Decisions will be entered under Rule 50.*

---

VAN FOSSAN, dissenting: I am unable to agree that on the record before us the stock in question has no fair market value. The fact that it may be difficult, on the evidence, to find some intermediate figure between that found by respondent and that contended for by the petitioners (here, no value) does not absolve the Board of its duty to find such correct value.

ARNOLD agrees with the above dissent.